IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY J. LABELLE, ) | |
| ) | |
| Petitioner, ) | Case No. CV02-0267-S-BLW |
| ) | |
| vs. ) | **MEMORANDUM ORDER** |
| ) | |
| THOMAS BEAUCLAIR and ) | |
| JEFF CONWAY, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

Pending before the Court is the review of the cause and prejudice issues in this case.  The Court also revisits the statute of limitations issue as a result of changes in case law occurring since the Court's last Order.

## I.

## BACKGROUND

On May 18, 1993, Petitioner was convicted of three counts of lewd conduct with a minor under the age of sixteen, involving three different children, under Idaho Code § 18-1508, in the Second Judicial District Court, in Nez Perce County, Idaho.  The Honorable Ron Schilling presided at trial and sentencing.  David Hadley was Petitioner's defense counsel at trial.  Judge Schilling sentenced Petitioner to three unified twenty-year

**MEMORANDUM ORDER - 1**

sentences, each with ten years fixed, to be served concurrently.  *See State's Exhibit A-1* (Docket No. 22).

Jeff Brudie was appointed as Petitioner's counsel on appeal.  The Idaho Supreme Court affirmed Petitioner's conviction and sentence.  *State v. LaBelle*, 887 P.2d 1071 (Idaho 1995).

In 1996, Petitioner filed a pro se Petition for Post-Conviction Relief, alleging that his appellate counsel was constitutionally ineffective.  John Church was appointed to represent Petitioner.  The state district court summarily dismissed the case.  *See State's Exhibit C-1*.  Petitioner appealed, through John Church, and the Idaho Court of Appeals affirmed the district court's order.  *LaBelle v. State*, 937 P.2d 427 (Idaho Ct. App. 1997). Petitioner, who was then residing in a Texas penitentiary,  asserts that he asked his counsel in writing and by telephone to file a petition for review in the Idaho Supreme Court.  Petitioner asserts that his counsel's office staff told him the petition would be filed.  Petitioner also asserts that his mother called counsel's office and confirmed that the petition would be filed.  *See State's Exhibit D-6*.

Counsel for Petitioner never filed a petition for review.  No motion or notice of withdrawal as attorney of record appears in the state court record.  The Court of Appeals issued its remittitur on May 21, 1997. *See State's Exhibit D-5*.  Three weeks later, upon learning that no petition was filed, Petitioner filed a motion for leave to file a belated

**MEMORANDUM ORDER - 2**

petition for review, a petition for review, and a brief.  *See State's Exhibits D-6 to D-8*.
The Idaho Supreme Court denied the motion.  *See State's Exhibit D-9*.

Petitioner first filed a federal Habeas Corpus Petition on December 18, 1997.  On
November 4, 1999, Petitioner withdrew the Petition after he was notified that not all of
his claims were properly exhausted.  *See* Docket in Case No. CV97-588-S-LMB.

On November 19, 1999, Petitioner filed a successive post-conviction petition in
state district court.  His case was dismissed.  The Court of Appeals affirmed, and the
Idaho Supreme Court denied his petition for review.  *See State's Exhibits F-1 to F-7*.

Petitioner next filed this federal action on June 11, 2002.  The Court determined
that (1) Petitioner had missed the statute of limitations, but that his lateness was excused
by the Court's earlier failure to instruct him on the stay-and-abey procedure when it
dismissed his case without prejudice, and (2) Petitioner's claims were procedurally
defaulted.  *See Orders* (Docket Nos. 25 and 38).  The Court now revisits the statute of
limitations issue and also considers whether Petitioner has shown cause and prejudice or a
miscarriage of justice to excuse his procedural default.

In his federal Petition, Petitioner asserts that his counsel on direct appeal was
ineffective under the Sixth Amendment standard for failing to raise these issues:

> (A)     a violation of due process and the right to a fair trial occurred when the state
> court denied his motion for a medical examination of the victims to show
> that no vaginal penetration had occurred;

**MEMORANDUM ORDER - 3**

(B)     a violation of due process and the right to a fair trial occurred when witnesses were allowed to testify of his alleged prior bad acts that occurred 10 to 16 years prior to trial;

(C)     a violation of the cruel and unusual punishment clause of the Eighth Amendment occurred when Petitioner was sentenced to three concurrent sentences of twenty years;

(D)     a violation of his Sixth Amendment right to appellate counsel occurred when counsel refused to raise certain issues on appeal;

(E)     a violation of his right to confront witnesses occurred when Petitioner could not interview or depose the victims prior to trial;

(F)     a violation of due process and the right to a fair trial occurred when the investigating officer sat at the prosecution's table at trial and heard all witnesses' testimony before he testified;

(G)      a violation of due process and the right to a fair trial occurred when the court allowed the charging information to be amended without specifications of date or time of commission of the crime, thereby prejudicing Petitioner's ability to prepare a defense, e.g., alibi);

(H)     a violation of due process and the right to a fair trial occurred when the trial court denied his request to present learned treatises in lieu of expert testimony on the topics of children's cognition, the effect of interviews on children's testimony, and post-traumatic stress syndrome in sexually abused children

(I)     a violation of due process and the right to a fair trial occurred when the prosecutor presented prejudicial evidence and argument;

(J)     a violation of due process and the right to a fair trial occurred when, during a brief break in the trial, the foreman of the jury was seen speaking to the investigative officer who was sitting at the prosecutor's table.

(K)     a violation of due process and the right to a fair trial occurred when the sentencing court did not order corrections to the PSI report which were biased and speculative.

**MEMORANDUM ORDER - 4**

(L)     a violation of his Sixth Amendment right to counsel at trial occurred when counsel failed to raise issues (F) through (K) as cumulative error.

## II.

## PRELIMINARY PROCEDURAL ISSUES

This federal habeas corpus case presents a wide array of procedural issues.  First, the Court previously determined that Petitioner's case was barred by the statute of limitations, but that equitable tolling was available because this Court had failed to advise him of the "stay and abey" procedure.  However, after issuance of that Order, the United States Supreme Court reversed the Ninth Circuit case holding that a district court is required to warn a petitioner of statute of limitations or successive petition problems if a first federal petition is dismissed.  *See Pliler v. Ford*, 542 U.S. 225 (2004).  Because the overruled holding was the basis for the Court's decision finding that the Petition was timely, the Court's decision is no longer appropriate.  Based upon *Pliler*, the Court determines that Petitioner's claims *are* barred by the statute of limitations.  Petitioner has not yet been provided with an opportunity to show whether equitable tolling should otherwise apply to his case.  However, for reasons stated below, the Court concludes that even if the Petitioner's claims are not barred by the statute of limitations, they are subject to dismissal.  It is therefore unnecessary to provide the petitioner with a further opportunity to establish that the statute of limitations is equitably tolled.

Second, the Court has determined that Petitioner's claims are procedurally defaulted.  Such claims cannot be heard in federal court unless the petitioner shows either

**MEMORANDUM ORDER - 5**

that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

There has been no showing of actual innocence in this case. Therefore, the Court turns to a cause and prejudice analysis. To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

In this case, the Court finds that Petitioner may be able to show cause for the procedural default of his claims under *Custer v. Hill*, 378 F.3d 968 (9th Cir. 2004), and *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997). *Custer* and *Clemmons* open the door to the possibility that a petitioner can show cause if (1) he asks his post-conviction counsel to take a step to raise (and therefore preserve) claims, (2) his post-conviction counsel fails to do so, (3) the petitioner acts pro se in the state court to attempt protect his rights, and (4) the state court refuses to entertain the pro se filing. To determine whether Petitioner can show cause, the Court would have to hold an evidentiary hearing. *See Manning v. Foster*, 224 F.3d 1129 (9th Cir. 2000). It is unclear at this point whether Petitioner's efforts to act in the Idaho Supreme Court after he knew the time period had run would be enough to invoke the *Clemmons* rule, or whether he should have actually filed a petition for review himself when he discovered that time was running out. However, the cause

**MEMORANDUM ORDER - 6**

and prejudice requirement is stated in the conjunctive.  Since the Court concludes that the petitioner is unable to establish prejudice, it is unnecessary to proceed with an evidentiary hearing on the issue of cause.  The Court will therefore begin with a determination of whether Petitioner has shown prejudice resulting from his direct appeal counsel's failure to raise Petitioner's issues on appeal.

## III.

### STANDARD OF LAW FOR A SHOWING OF PREJUDICE

To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in the proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."  *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  In other words, "prejudice is actual harm resulting from the alleged constitutional violation."  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984) (internal quotation marks omitted); *see also Coleman*, 501 U.S. at 750.  When a court conducts a prejudice analysis in the context of a defaulted ineffective assistance of counsel claim, it applies the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which is that a petitioner must demonstrate "'a reasonable probability that, but for

**MEMORANDUM ORDER - 7**

[the] errors, the result of the proceedings would have been different.'" *Robinson v. Ignacio*, 360 F.3d 1044, 1054-55 (9th Cir. 2004) (quoting *Strickland*, 466 U.S. at 694).[1]

The Court now reviews each of Petitioner's claims for prejudice to determine whether Petitioner has shown a reasonable probability that, but for the alleged errors of counsel, the result of the appeal would have been different.

## Claim A: Medical Examination Request

Counsel for Petitioner raised on appeal the issue that the trial court had refused Petitioner's request that the child victims be examined by an expert witness. Counsel presented this issue on appeal as a state law claim. Petitioner now asserts that counsel "improperly developed and inadequately presented" the issue. Instead, he argues that the issue that should have been presented is that the trial court's failure to allow him to obtain a medical expert to perform examinations on the victims two years after the alleged incidents violated his due process and equal protection rights under the Fourteenth Amendment and his right to a fair trial under the Sixth Amendment. *Petitioner's Brief*, at p. 3 (Docket No. 19); State's *Exhibit B-1*, at 6-7.

On appeal, the Idaho Supreme Court found no error in the trial court's denial of a medical expert, determining that (1) Petitioner had failed to "present any evidence tending to show that an examination of the three children two to three years after the last

---

[1]For an interesting discussion on whether a "prejudice" analysis is the same as a "merits" analysis, see *Tyler v. McCaughtry*, 293 F.Supp.2d 920 (D.Wis. 2003).

**MEMORANDUM ORDER - 8**

alleged incident of abuse would have produced relevant evidence"; and (2) that

"corroboration or refutation of penetration was not dispositive because penetration was

not an element of the charged offense." *State's Exhibit B-5*, at p. 5.

In addition, the Idaho Supreme Court noted that it had earlier explicitly reserved

the question of whether or not a court in a criminal case has authority to order a physical

examination of the victim in a sexual crime case, *see  State v. Filson*, 613 P.2d 938 (Idaho

1980), and it declined to resolve that issue in Petitioner's case.  In *Filson*, the Idaho

Supreme Court held that the trial court in a rape prosecution did not err in failing to order

a psychological examination of the victim absent a showing in the record of a

"compelling need."

The United States Supreme Court has never held that due process demands that

courts grant all requests for physical examinations of victims of sexual crimes.  The Due

Process Clause guarantees only a "meaningful opportunity to present a complete

defense." *Calfornia v. Trombetta*, 467 U.S. 479, 485 (1984).  It does not require that

every request regarding a defendant's defense be granted.  *See Gilpin v. McCormick*, 921

F.2d 928, 931-32 (9th Cir. 1990) (state court refusal to compel child sexual assault victim

to undergo psychiatric examination did not violate due process).

Here, on the facts presented, the trial court reasonably exercised its discretion

regarding the request for an expert examination of the children two years after the alleged

acts, where penetration was not an element of the crime charged.  Due process is not

**MEMORANDUM ORDER - 9**

offended by such a ruling.  In addition, equal protection does not come into play, because Petitioner failed to meet the threshold issue of showing that an expert opinion would have been helpful to his case; he was *not* denied an expert because of his in forma pauperis status.

Considering the facts and the elements of the crime charged in light of the foregoing legal landscape, the Court concludes that had counsel presented this issue on appeal as a federal issue, the outcome would have remained the same.  No ineffective assistance of counsel occurred, and no prejudice has been shown as to this claim.

## Claim B: Prior Bad Acts

At trial, Petitioner's daughter and his former stepdaughter, both in their 20s, were allowed to testify that Petitioner had sexually molested them repeatedly, beginning 10 to 16 years before the charged incidents occurred.   The trial court limited the purpose of the testimony for the jury and did not allow it as propensity evidence.  Petitioner asserts that his direct appeal counsel asserted the issue on appeal as a state law claim, but failed to bring it as a violation of due process and the right to a fair trial.

In its opinion, the Idaho Supreme Court analogized Petitioner's case to an almost identical issue and set of facts in *State v. Moore*, 819 P.2d 1143 (Idaho 1991).  In *Moore*, the court ruled that the same type of evidence was relevant to show a "general plan to exploit and sexually abuse an identifiable group of young female victims."  *Id*. at 1145. The Idaho Supreme Court applied that holding to Petitioner's case.  The court also

**MEMORANDUM ORDER - 10**

determined that (1) the testimony was relevant; (2) that the trial court did not abuse its discretion in ruling that the probative value was not substantially outweighed by the danger of unfair prejudice; and (3) that the trial court properly limited the testimony to only those acts most similar to the acts for which LaBelle was on trial, and properly instructed the jurors that they could not consider the uncharged acts in determining guilt or innocence.

There is no law supporting Petitioner's argument that the trial court's admission of the two witnesses' testimony violated due process or the right to a fair trial. The United States Supreme Court has held that it does *not* offend due process to allow the jury in a child abuse case to hear evidence of other prior incidents of abuse upon the child victim "for the purpose of showing intent, identity, motive, or plan." *Estelle v. McGuire*, 502 U.S. 62, 75 (1991). The *Estelle* Court left open the question of "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *Id.*, at 75 n.5. *Estelle* does not support Petitioner's claims.[2]  Therefore, there is no law supporting Petitioner's argument that the

---

[2]While in Petitioner's case the prior bad acts evidence does *not* rise to the level of an instruction allowing the jury to consider the prior acts as propensity to commit the charged crime, *even* propensity evidence has not been found to violate due process in child molestation cases in the Ninth Circuit. The Ninth Circuit Court of Appeals has noted that trial courts have "routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions." *U.S. v. LeMay*, 260 F.3d 1018, 1025 (9th Cir. 2001).

The Court notes that any cases it cites that were published after the Idaho courts ruled on Petitioner's claims will be referenced in footnotes for the purpose of showing that the trend in the law remains constant to date.

**MEMORANDUM ORDER - 11**

evidentiary ruling in his case offended due process or the right to a fair trial.  There has been no showing of prejudice for counsel's failure to raise this issue as a due process or fair trial claim on appeal.

## Claim C: Cruel and Unusual Punishment

Petitioner asserts that his right to be free from cruel and unusual punishment under the Eighth Amendment was violated when Petitioner was sentenced to three concurrent sentences of twenty years.  He argues that he had no prior convictions, that his crime was not one of violence, and that he could have been rehabilitated.  In his direct appeal, Petitioner's counsel presented this issue as a state abuse of discretion issue rather than a federal issue.  Here, he asserts that his counsel was ineffective for failing to present the issue as an Eighth Amendment claim.

The United States Supreme Court has issued several opinions addressing whether lengthy sentences constitute cruel and unusual punishment.  In *Hutto v. Davis*, 454 U.S. 370, 372 (1982), the Supreme Court stated that "this Court has never found a sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment."  In *Hutto*, the Supreme Court held that the petitioner was not entitled to habeas corpus relief under the Eighth Amendment for a sentence of forty years and a $10,000 fine for two counts of possession of marijuana with intent to distribute.  The *Hutto* Court rejected the petitioner's cruel and unusual punishment claim based upon his

**MEMORANDUM ORDER - 12**

argument that the sentence was disproportionate to the crime, noting that it had previously rejected the same argument in *Rummel v. Estelle*, 445 U.S. 263 (1980).

In *Solem v. Helm*, 463 U.S. 277 (1983), the United States Supreme Court held that the Eighth Amendment's guarantee against cruel and unusual punishment requires that a sentence be proportionate to the crime for which the defendant has been convicted where the sentence is life without the possibility of parole.  It held that such a sentence was significantly disproportionate and hence cruel and unusual punishment for the nonviolent offense of tendering a "no account check" for $100.00, where the defendant's prior felonies were relatively minor, the sentence was the most severe punishment in that state, and only one other state authorized the same sentence for such a crime.  The *Solem* Court observed that, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare."  *Id.*, 463 U.S. at 289-90.  The *Solem* Court identified three factors a court should review in a proportionality analysis: "(I) the gravity of the offense and the harshness of the penalty;  (ii) the sentences imposed on other criminals in the same jurisdiction;  and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  *Id.*, 463 U.S. at 292.

In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), the United States Supreme Court not only rejected the petitioner's disproportionality argument on the particular facts and law at issue, but it also backed away from its view on disproportionality articulated in *Solem*.  There, the Court affirmed a Michigan court judgment sentencing Petitioner

**MEMORANDUM ORDER - 13**

Harmelin to a statutory mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine.[3]

In *Cacoperdo v. Demosthenes*, 37 F.3d 504 (9th Cir. 1994), the Ninth Circuit Court of Appeals reviewed a case similar to Petitioner's. Cacoperdo was challenging a  sentence of 40 years imprisonment for a conviction of sexual molestation of his three teenaged daughters.  The court rejected Cacoperdo's cruel and unusual punishment argument, reasoning:

> Cacoperdo's sentence is neither extreme nor grossly disproportionate to his crimes.   Sexual molestation of a child is a very serious offense.   Cacoperdo was convicted on ten separate counts, and the record reflects that they were only representative of a pattern of conduct that continued over a six-year period.   The impact of these crimes on the lives of the victims is extraordinarily severe.   If Cacoperdo is paroled after 40 years, he will have served an average of four years for each count.   We conclude that a comparison of the gravity of Cacoperdo's offenses with the harshness of his sentence does not raise an inference of gross disproportionality. . . .

37 F.3d at 508 (relying upon *U.S. v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992)).

Applying these standards to Petitioner's case, the Court finds that assertion of an Eighth Amendment claim on appeal would have been futile.  Petitioner's counsel was not ineffective; therefore, Petitioner suffered no prejudice from the default of this claim.

## Claim D: Failure to Raise Certain Issues (E) -(L) on Appeal

---

[3]In  *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court held that a sentence for stealing videotapes that produced a 25-year sentence under a "three strikes" law was not a violation of Eighth Amendment.  *See also Ewing v. California*, 538 U.S. 123 (2003) (affirming sentence of 25 years to life for stealing three golf clubs under the "three strikes" law) (plurality opinion).

**MEMORANDUM ORDER - 14**

This is not a separate claim in itself, but appears to be a repetition of Claim L, a cumulative error claim.  Therefore, the Court will address Claim L rather than Claim D.

**Claim E: Right to Confront Witnesses**

Petitioner asserts that it was unfair for the trial court to allow the prosecution to meet with the victims, but to refuse Petitioner/Defendant the opportunity to interview or depose them.[4]  The trial court denied Petitioner's request to require the victims to meet with Petitioner's counsel, noting that it knew of no way to force the victims to be subjected to interviews by Defendant or his counsel.  Petitioner now asserts that counsel should have raised this issue as a Confrontation Clause violation on appeal.

In *Mattox v. United States*, 156 U.S. 237 (1895), the United States Supreme Court held that the "substance of the constitutional protection [of the confrontation clause] is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." *Id*. at 244.[5]  Petitioner has pointed to no law that supports his argument that the Confrontation Clause requires anything other than the right to cross-examination, and the Court finds none in its

---

[4]Petitioner's counsel interviewed L.H., one of the victims, with the permission of her parents, prior to the preliminary hearing.  *See State's Exhibit A-2,* at p. 175.  Counsel also cross-examined the victims at the preliminary hearing, and had access to the written transcripts of interviews between the victims and investigator Tom Greene.  All of these items could be used at trial to cross-examine the victims.

[5]In *Crawford v. Washington*, 541 U.S. 36 (2004), the court cited *Mattox*, noting that "Our later cases conform to *Mattox*'s holding that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to *cross-examine*." *Id*. at 57 (emphasis added).

**MEMORANDUM ORDER - 15**

research.  Consequently, no ineffective assistance of counsel occurred on appeal

regarding failure to bring this claim.

## Claim F: Errors involving Investigating Officer

Petitioner argues that it was error for the investigating officer, who was also sitting

at the Prosecution table as the State's representative during the trial, to be present to hear

all of the witnesses' testimony and then testify himself.  Petitioner asserts that counsel

erred in failing to raise this issue on appeal as a due process and fair trial claim.

Idaho Rule of Evidence 615(a) provides for the exclusion of witnesses, and, for the

most part, it mirrors the federal rule.   Both rules provide for exceptions to the exclusion

of witnesses, including an exception for "an officer or employee of a party that is not a

natural person designated as its representative by its attorney."  I.R.E. 615(a).  Under the

state rule, exclusion is at the trial court's discretion.  In *State v. Ralls*, 725 P.2d 190 (Ct.

App. Idaho 1986), the Idaho court noted that there was much authority recognizing that

the exceptions apply to investigative agents, including local police officers.  *Id*. at 192.

The Advisory Committee's Note to Federal Rule of Evidence 615 explains why

the Rule includes these exceptions:

> Many district courts permit government counsel to have an investigative
> agent at counsel table throughout the trial although the agent is or may be a
> witness. The practice is permitted as an exception to the rule of exclusion
> and compares with the situation defense counsel finds himself in – he
> always has the client with him to consult during the trial. The investigative
> agent's presence may be extremely important to government counsel,
> especially when the case is complex or involves some specialized subject
> matter. The agent, too, having lived with the case for a long time, may be

**MEMORANDUM ORDER - 16**

able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty. Yet, it would not seem the Government could often meet the burden under Rule 615 of showing that the agent's presence is essential. Furthermore, it could be dangerous to use the agent as a witness as early in the case as possible, so that he might then help counsel as a nonwitness, since the agent's testimony could be needed in rebuttal. Using another, nonwitness agent from the same investigative agency would not generally meet government counsel's needs.

This problem is solved if it is clear that investigative agents are within the group specified under the second exception made in the rule, for "an officer or employee of a party which is not a natural person designated as its representative by its attorney." It is our understanding that this was the intention of the House committee. It is certainly this committee's construction of the rule. Senate Report No. 93-1277.

Fed. R. Evid. 615 advisory committee's note.

The Court has found no cases that support Petitioner's argument that the circumstances of his particular trial violated his right to due process and right to a fair trial.  In addition,  when the investigator's testimony at trial is compared to his testimony at the preliminary hearing, Petitioner does not point to any specific testimony that the investigator changed as a result of his hearing all of the other witnesses.  Petitioner has shown neither deficient performance nor prejudice related to his counsel's decision not to challenge this issue on direct appeal.

Petitioner also asserts that counsel should have objected when Greene was allowed to state his opinion on the evidence and credibility of other witnesses.[6]  After reviewing

---

[6]Plaintiff also incorrectly asserts that Judge Schilling stated how much he enjoyed competent police testimony in front of the jury.  Judge Schilling made the statement, "Corporal Greene is a good witness and I enjoy listening to him testify," but it was *not* in the presence of the jury.  *Exhibit A-6*, at p. 934.

**MEMORANDUM ORDER - 17**

the transcript, the Court does not find any portion of the record that suggests that Greene

improperly stated his opinion on the evidence or as to the credibility of other witnesses.

Greene was asked about the demeanor of the child victims during the interview, and he

answered that they appeared, "quiet," "shy," and "afraid."   *State's Exhibit A-6*, at 931-33.

Such testimony does not rise to the level of testifying about the credibility of the

children.[7]

The Court finds nothing in the transcript that would support Petitioner's

allegations of error in the type of testimony provided by Corporal Greene.  Therefore, no

prejudice has been shown.

## Claim G: Allowing Amended Information

Petitioner argues that the "information charging him with criminal conduct was

amended several times and that it was never made specific as to the criminal acts charged

or the times and dates of their alleged commission."  *State's Exhibit D-8*, at p. 23.

  Petitioner was tried upon the Third Amended Information, which contained only the

month and year of the alleged incident, and which changed the type of lewd conduct

previously identified.

---

[7]In any event, Idaho Rule of Evidence 608(a) provides that credibility of a witness may
be attacked or supported by opinion evidence. Hence in *State v. Carsner*, 894 P.2d 144 (Ct. App.
Idaho 1995), the court concluded that a police office who conducts an investigation makes an
assessment of the witness's credibility and truthfulness, and thus may render his personal
opinion about his truthfulness at trial.  *Id*. at 150.

**MEMORANDUM ORDER - 18**

Petitioner argues that, if a particular date had been specified in the information, rather than a month and a year, he could have come forward with an alibi defense. Petitioner's counsel decided not to include this in his appellate brief because the burden of proof was too high. *State's Exhibit C-1*, at pp. 18-19.

An information or indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. U.S.*, 418 U.S. 87 (1974). In *State v. Taylor*, 797 P.2d 158 (Ct. App. Idaho 1990), the court rejected essentially the same argument Petitioner now makes, holding that an information specifying that sexual abuse occurred between the months of June and September 1987 was sufficient, even where the defendant wished to assert an alibi defense. *Id*. at 159-160. The *Taylor* case catalogues several cases from other states holding similarly. *Id*. at 160.[8] Further, the United States Supreme Court has not determined that an information in a child sexual abuse case is constitutionally deficient for failure to provide specific dates of incidents.

Petitioner also alleges that the information was not specific as to the crime charged and was amended several times. Idaho Criminal Rule 7(e) provides that "[t]he court may permit a complaint, an information or indictment to be amended at any time before the

---

[8]Several federal circuit courts have held the same. *See Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005) (citing Seventh and Tenth Circuit cases) ("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.").

**MEMORANDUM ORDER - 19**

prosecution rests if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."  In Petitioner's case, the court allowed the prosecutor to amend the information once after the preliminary hearing, and once at trial before it rested.  *See State's Exhibit A-6*, at p. 824-28.

An additional or different offense was not charged.  Rather, the type of lewd conduct was changed according to how the victims testified at the preliminary hearing and then at trial, for example, the first count was changed from manual-genital contact to genital-genital contact, and then back to manual-genital contact.  *See State's Exhibit A-1*, at pp. 32-33 (first information), pp. 45-46 (second information), and pp. 126-27 (third information).

On the motion to amend, the trial court reasoned:

> In this case the – really the – I don't see anything difference [sic] in your defense.  Whatever your defense will be and your cross examination has been, I don't see any difference in the approach whether the contact is manual genital or genital genital in a lewd and lascivious conduct case and the times being the same and so on.  I just don't see any prejudice with regard to that amendment to the defendant at all.

> There is no difference in preparation, there is no difference in witnesses.  There is no difference in the type of testimony that is going to be elicited and I think that you – you did a very able job of pointing out to the jury and I think, really, a very – very able job of handling child witnesses in such a way as to not offend a jury but yet to point out any inconsistencies and I will say that, I think you did a very good job of doing that.  You have the opportunity to do that whether or not – probably more so now with the amendment.  You have the chance to do that.  So I really don't see any prejudice to the defendant.  If anything, it might be another – something more for you to argue in final argument.

> I'm going to – I'm going to grant the motion to amend.

**MEMORANDUM ORDER - 20**

*State's Exhibit A-6*, at 827-28.  This Court agrees with the trial court's analysis, finding no prejudice in the amendment under the circumstances of this case.  Because Petitioner has not shown that either of his arguments regarding the information would have changed the result of the appeal, he has not shown prejudice.

## Claim H: Disallowing Learned Treatises

At trial, the court refused to allow Petitioner to present learned treatises in lieu of expert witness testimony.  Petitioner asserts that his counsel erred by not presenting this issue on direct appeal.  The learned treatise that was not allowed at trial addressed the following topics:

(1)    the cognitive development of children;

(2)    the manner in which biased interviews may contaminate the testimony of impressionable children;

(3)    the results of interviews by unknowing interviewers may very well result in children offering testimony that is interwoven with alleged facts that the interviewer has personally relayed to the young children; and

(4)    the post-traumatic stress disorder patterns in sexually abused children.

*Petitioner's Brief*, at p. 8 (Docket No. 19).

Petitioner relies on *State v. Alger*, 764 P.2d 119 (Ct. App. Idaho 1988), where the Idaho Court of Appeals determined under Idaho law that it was improper for a trial court to *categorically* deny a defendant the opportunity to use a learned treatise on the topic of problems of reliability in eyewitness identification testimony.  The court concluded that each such item "should be evaluated carefully on its own empirical and legal merits. . .

**MEMORANDUM ORDER - 21**

requir[ing] trial judges to exercise a sound and informed discretion." *Id*. at 128.  In *Alger*, the court determined that the failure to admit the learned treatise was harmless error because of the abundance of evidence in addition to the eyewitness testimony.

In Petitioner's case, the trial court did not categorically disallow the learned treatise.  Rather, the Court exercised its discretion by determining that Petitioner had not established that the article, from a magazine titled *Vocal Perspective*, was a "learned treatise" or that its author was a qualified expert.  *State's Exhibit A-7*, at pp. 1149-55. Therefore, Petitioner has shown no error and no prejudice.


## Claim I: Prosecutor Presented Prejudicial Evidence and Argument

Petitioner argues that the Prosecutor made the following errors at trial:

(1)    argued in closing argument that the victims were undergoing professional counseling and that they were crying when they related their stories to Corporal Greene, contrary to the record.

(2)    nodded her head while the witnesses were testifying to elicit the responses she wanted.

(3)    instructed the witnesses to hold dolls during the trial even though they had not requested to; this was designed to elicit profound sympathy from the jury.

(4)    elicited statements from the witnesses that Corporal Green had told them of other misconduct with other unnamed victims.

Petitioner asserts that direct appeal counsel should have raised these issues on direct appeal as constitutional errors.  The Court will consider each.


**MEMORANDUM ORDER - 22**

When prosecutorial misconduct has been alleged, the conduct must be examined to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." *U. S. v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990). In *U.S. v. Yarbrough*, 852 F.2d 1522 (9th Cir. 1988), the court noted:

> The test for determining whether prosecutorial misconduct requires a mistrial is whether the remarks were improper and whether they prejudicially affected substantial rights of the defendant. *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981) (improper statements in closing arguments). Also, misconduct does not require reversal where there is strong evidence of the defendant's guilt. *United States v. Parker*, 549 F.2d 1217, 1221 (9th Cir.), cert. denied, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977) (following *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (harmless error standard)).

*Id*. at 1539.

Petitioner first argues that the Prosecutor mistakenly stated in closing argument that the victims were undergoing professional counseling. A review of the record shows that there was a long, rather confusing colloquy during trial in which one of the children stated that she had gone to counseling, but then clarified that the counseling sessions had been for a purpose other than the sexual incident with Petitioner. *State's Exhibit A-5*, at p. 641-44. When the Prosecutor rebutted Petitioner's closing remarks that the victims had not been in counseling by trying to reference the victim's unrelated counseling testimony, Petitioner's counsel objected. The court overruled the objection, stating, "The jury will – the jury will remember whatever the – how they remember the evidence." *State's Exhibit A-8*, at pp. 1300-01.

**MEMORANDUM ORDER - 23**

Petitioner also argues that the Prosecutor mistakenly stated that the victims had been crying when they related their stories to Corporal Greene. The record contains testimony that one of the victims was crying when she related the sexual abuse information to her *aunt*, not the investigator.  *State's Exhibit A-5*, at p. 660.

Petitioner has not shown how these misstatements about counseling and crying created an unfair trial in light of the evidence presented.  The jury had a first-hand opportunity to observe the demeanor of each child victim at trial, and, as the trial court observed, "they would remember whatever . . . or how[ever] they remember the evidence."  The jury was also instructed that the Prosecutor's statements amounted to mere argument and that they were the factfinders in this case.  *State's Exhibit A-8*, at pp. 1223-24. The counseling and crying misstatements were not directly related to the elements of the crime charged.  In short, no prejudice from these misstatements has been shown.

Second, Petitioner argues that the Prosecutor should not have nodded her head while the child victims were testifying.  He argues that the head-nodding was done for the purpose of eliciting the responses she wanted.  This is mere speculation.  It is just as likely that this was simply an unintended mannerism or a way to acknowledge a response or to encourage the victim to respond, rather than an attempt to manipulate the *content* of the response.  For example, Petitioner does not argue that the Prosecutor turned her head from side to side in a negative manner at any point to indicate that she was displeased by the victims' responses.  Neither does Petitioner show that the victims changed their

**MEMORANDUM ORDER - 24**

testimony to correspond with the head-nodding.  Petitioner has failed to show prejudice resulting from his counsel's failure to raise this issue on appeal.

Petitioner further argues that the Prosecutor instructed the witnesses to hold dolls during the trial even though they had not requested to, and that this was a tactic designed to elicit profound sympathy from the jury.  There is no evidence suggesting that the jury would not have convicted Petitioner if the witnesses were not holding dolls or toys during the trial or that the appeal result would have been different.  In *State v. Cliff*, 782 P.2d 44 (Id. Ct. App. 1989), the court held that because the doll the child victim held in court had a calming effect on her, the benefit of having coherent testimony from the witness outweighed any possible prejudice to the defendant, and there was no error.  *Id*. at 47.  If the holding of a doll is merely a prosecution tactic to elicit sympathy from the jury, it *can* offend due process.  *Id.*  In *Cliff*, the court held that, under the circumstances, neither the Confrontation Clause nor the Due Process Clause was offended.  *Id*. at 46-47.

In Petitioner's case, the trial court made the same type of determination as in *Cliff*.  The Prosecutor explained that the child witness could talk better if she held something in her hand.  The judge decided that the child witness could hold a two-and-a-half-inch-diameter green "cush ball" rather than a doll, while testifying, to diminish the sympathy factor.  *State's Exhibit A-4*, at 540-41.  The court thoughtfully balanced the interests of the parties and reasonably exercised its discretion.  No error has been shown in the failure to include this as an appeal issue.

**MEMORANDUM ORDER - 25**

Petitioner also argues that the prosecutor elicited from the child victims the information that Corporal Greene had told them of Petitioner's misconduct with other unnamed victims.  However, this information was also made known to the jury at trial in other ways, such as when Petitioner's daughter, Petitioner's stepdaughter, and the other child victims testified.  In other words, it was no secret to the jury that Petitioner had been accused of other instances of sexual misconduct with minor females, and, therefore, this information, offered in a different form by the Prosecutor, was not prejudicial.

Further, Petitioner's counsel used the information that Greene had told the child victims that there were other victims to Petitioner's advantage, as part of his defense that the investigator had led and manipulated the testimony of the child witnesses from the very first interview.  Petitioner's counsel brought out on cross-examination that the investigator, Tom Greene, had neglected to record these early statements prior to the child victims' interviews, but recorded only those parts of the interviews tending to show Petitioner's culpability.  Petitioner's appellate counsel did not err in failing to assert this issue on appeal.

## Claim J: Jury Foreman

Petitioner asserts that it was a violation of his constitutional rights to have Mr. Higgins seated on his jury, because Higgins was employed as Chaplain of the Lewiston Police Department.  Petitioner also asserts that his rights were violated when Mr. Higgins, who became foreman of the jury, briefly spoke to the prosecution witness during a break in the trial.

**MEMORANDUM ORDER - 26**

Petitioner has failed to show any prejudice that resulted from having the Chaplain of the Lewiston Police Department serve on his jury.  Petitioner cites to *State of Arizona v. Hill*, 848 P.2d 1375 (Ariz. 1993), a case that the Court finds supportive of the trial court's decision in Petitioner's case.  In *Hill*, the trial court refused to grant a challenge for cause of a juror who was a police officer, although the officer knew the coroner, the prosecutor, and the prosecutor's investigator.  The juror stated that his acquaintance with the prosecutor and his investigator would not affect his ability to serve as a fair and impartial juror.  *Id*. at 1381.

In Petitioner's case, there is no evidence that an individual  juror or the jury as a whole were swayed in the State's favor as a result of Mr. Higgins serving on the jury.  Counsel for Petitioner stated to the judge that he was initially concerned about Mr. Higgins' connection to the police department, but then decided to leave him on the jury for strategic reasons.  *State's Exhibit A-6,* at p. 941.  Here, Petitioner merely assumes that the Chaplain was prejudiced.  However, he points to absolutely no evidence to support his assumption.  Therefore, he has shown no prejudice as a result of his counsel's failure to include this issue on appeal.

Petitioner also points to the fact that Mr. Higgins had a brief, friendly discussion with the Prosecution's key witness, Corporal Greene, during a short break in the trial.  In *Turner v. Louisiana*, 379 U.S. 466 (1965), the United States Supreme Court held that it undermines the basic guarantees of trial by jury to permit a "continuous and intimate

**MEMORANDUM ORDER - 27**

association" between prosecution witnesses and jurors during a trial, noting that the

association in that case was not a "brief encounter."

However, in Petitioner's case, the encounter was extremely brief.  The trial court

held the following in camera voir dire to determine what had happened:

> The Court:    And at that time you had seen three officers including Corporal
> Greene?
>
> Juror:    Yeah.
>
> The Court:    Did you hear any conversation among those three officers?
>
> Juror:    No.  I was going down to the men's room right here on the floor.
> Turned left down there where the facilities are.  The [sic] was three
> officers there, I think Tom and I – one said hi, Jim, what happened to
> you.  And I had my mouth about half open and Tom said he's a juror,
> don't talk to him.  I said shoulder surgery, guys.  That was it.  I went
> in the restroom.  Came back out and left.
>
> The Court:    And you heard nothing else?
>
> Juror:    No.

*State's Exhibit A-6*, at p. 942.

Had counsel raised Petitioner's argument on appeal, it would have been rejected

by the court.  There was no error in allowing the jury to proceed on the case where

nothing but the foregoing conversation was shown to have occurred.  Therefore, there is

no prejudice arising from this claim.

## Claim K: Sentencing Court did not Correct PSI Report

Petitioner alleges that his counsel was ineffective as to several factors related to

the Presentence Investigation Report (PSI Report).  First, Petitioner alleges that counsel

**MEMORANDUM ORDER - 28**

should have argued that the PSI investigator did not have a college degree or any

specialized training.  Petitioner fails to show that, had a more educated or experienced

investigator prepared the report, his sentence would have been more favorable, or, had

this been raised on appeal, his sentence would have been overturned.  As a result,

Petitioner has shown no prejudice resulting from the failure to appeal this issue.

Petitioner next argues that the PSI investigator should not have included in the PSI

report a speculative statement regarding drugs.  During the PSI interview, Mr. LaBelle

denied ever having used illegal controlled substances and stated: "I never even knew it

existed while I was in Vietnam until I came back home."  The investigator commented in

the PSI Report that "[I]t is unlikely that Mr. LaBelle never saw marijuana or any

controlled substance while he was stationed in Vietnam."  *State's Exhibit A-9,* at p. 6-7.

Petitioner's counsel cross-examined the investigator on this point at the sentencing

hearing.  At hearing, she explained that she did not mean that every service man used or

was exposed to drugs, but that she thought it was unlikely that Petitioner had never been

around it or seen it.  *State's Exhibit A-8,* at p. 1378.  She also stated that she was not

intimating that he was lying.  *Id.*

There is no hint in the sentencing record that the Court was swayed by this

statement.  In fact, whether Petitioner used drugs or alcohol was not a factor in the case

and was not a factor in sentencing.  *Id.*, at pp.1423-1430.  Therefore, Petitioner has failed

to show prejudice regarding counsel's failure to raise this issue on appeal.

## Claim L: Cumulative Error for Failure to Raise Above Issues (F) to (K)

**MEMORANDUM ORDER - 29**

Because Petitioner has failed to show individual error of counsel on appeal amounting to ineffective assistance of counsel, there is no grounds to consider the cumulative effect of the error.  Therefore, Petitioner has shown no prejudice related to this claim.  Because Petitioner has not demonstrated "'a reasonable probability that, but for [the] errors, the result of the [appellate] proceedings would have been different,'" *Robinson v. Ignacio*, 360 F.3d at 1054-55, his Petition is subject to dismissal for failure to show prejudice to excuse the procedural default of his claims.

## IV.

## INSTRUCTIONS FOR APPEAL

Before a petitioner may appeal from the dismissal of a 28 U.S.C. § 2254 petition, he must first obtain a certificate of appealability by filing a request for a certificate of appealability with the federal district court.  28 U.S.C. § 2253(c).  Until a certificate of appealability has been issued, an appellate court lacks jurisdiction to rule on the merits of an appeal.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).   A federal district court will not issue a certificate of appealability absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard by demonstrating that reasonable jurists would find debatable both the merits of the constitutional claims and any dispositive procedural rulings by the district court.  *Miller-El v. Cockrell*, 537 at 336 (2003).

**MEMORANDUM ORDER - 30**

## V.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Order Denying Respondent's Motion for Summary Dismissal (Docket No. 25) is VACATED.

IT IS FURTHER HEREBY ORDERED that Respondent's Motion for Summary Dismissal (Docket No. 25) is GRANTED for failure to show prejudice for the procedural default of his claims. Petitioner's Petition is dismissed with prejudice.

DATED: **August 5, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**MEMORANDUM ORDER - 31**